**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: 973-623-3000
Fax: 973-623-0858
bgreenberg@litedepalma.com

**AHDOOT & WOLFSON, P.C.**
Tina Wolfson (twolfson@ahdootwolfson.com)
Robert Ahdoot (rahdoot@ahdootwolfson.com)
Theodore W. Maya (twolfson@ahdootwolfson.com)
Bradley K. King (bking@ahdootwolfson.com)
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE ZARDENETA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GENERAL MILLS, INC., a Delaware corporation; and DOES 1-50,<br><br>                    Defendants | Civil Action No. 12-cv-03567-KM-MCA<br><br>(Consolidated with Civil Action No. 12-cv-00249-KM-MCA)<br><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND <u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Christine Zardeneta, by and through her counsel, brings this Class Action Complaint against General Mills, Inc., on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      In recent years, consumers have become more willing to pay a premium for food and beverages that they perceive to be healthy, organic, natural and non-genetically modified.  As a result, the market for natural or organic foods and beverages has grown rapidly, yielding billions of dollars in revenue for food and beverage manufacturers.

2.      General Mills, Inc. ("General Mills" or "Defendant") is an American Fortune 500 and worldwide cereal conglomerate.  In 2011, General Mills generated $14.88 billion in revenue.

3.      Defendant manufactures, markets and sells the cereal "Kix" nationwide from its manufacturing plant in Minneapolis, Minnesota.  Kix® products are available in the "Original," "Honey," and "Berry Berry" varieties (collectively, the "Products.")

4.      In an effort to capture a segment of the lucrative health food market, Defendant has systematically marketed and advertised Kix® as being "made with All Natural Corn" on the cereal boxes, so that any United States consumer who purchases Kix® is exposed to Defendant's "all natural corn" claim.

5.     This claim is deceptive and misleading because Kix® are made with unnatural corn ingredients.  Specifically, Kix® are made with GMO corn plants whose genes have been altered by scientists in a lab for the express purpose of causing those plants to exhibit traits that are not naturally their own.  GMO are not natural by design.

6.     Accordingly, Defendant misleads and deceives reasonable consumers, including the named Plaintiff and the other members of the Class, by portraying a product made from unnatural corn ingredients as being "made with All Natural Corn."

7.     Defendant's conduct harms consumers by inducing them to purchase and consume a product with GMO on the false premise that the product is "made with All Natural Corn."

8.     Plaintiff brings claims against Defendant individually and on behalf of a nationwide class of all other similarly situated purchasers of Kix® for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*. ("UCL"), the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"), and the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"). Plaintiff seeks an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay

3

damages and restitution to Plaintiff and Class members in the amounts paid to purchase the Products.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is involved as to whether Defendant violated Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

10.     The Court has personal jurisdiction over General Mills because General Mills purposefully avails itself of the New Jersey consumer market.  General Mills is authorized to, and conducts, substantial business in New Jersey.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events and omissions giving rise to this action occurred in this District, and Plaintiff dealt with Defendant, who does business in this District.

12.     A Motion to Consolidate this action with *Bevans v. General Mills, Inc.*, 2:12-cv-249-FSH-PS and *Marcus v. General Mills, Inc.*, 2:12-cv-2886-FSH-PS was filed in this Court on July 13, 2012 and is uncontested by Defendant.

////


////

4

359556.1

## PARTIES

13.     Plaintiff Christine Zardeneta is a resident of Los Angeles, California.  Ms. Zardeneta has purchased Kix® Original cereal in California over the past four years in reliance on Defendant's representations that the Products were "made with All Natural Corn".  These representations and omissions were material to Ms. Zardeneta's decision to purchase the Products.  Ms. Zardeneta was willing to pay for the Products because of the representations that they were "made with All Natural Corn" and would not have purchased the Products in absence of the representations.

14.     Defendant General Mills, Inc. is a Delaware corporation with its principal place of business at Number One General Mills Boulevard, Minneapolis, Minnesota 55426.  Defendant manufactures and distributes the Products from its manufacturing plant in Minneapolis, Minnesota to consumers throughout the United States.

## SUBSTANTIVE ALLEGATIONS

### Defendant Deceptively Labels Kix® As "Made With All Natural Corn"

15.     Throughout the Class Period, Defendant systematically marketed and advertised Kix® cereal as "made with All Natural Corn" in product packaging.

16.     Defendant labels every box of Kix® as "made with All Natural Corn" next to a prominent image of a corn stalk that is directly below the cereal name Kix®:

359556.1



359556.1

17.     The back of the box also features slogans and representations to induce the purchaser into believing that the product is made with all natural corn, including the following statement: "Start the morning simply, start life right.  Made with simple, good-for-you ingredients like all-natural whole grain corn, KIX® cereal is a tasty way to kick off a great day!"



359556.1

18.     By consistently and systematically marketing and advertising Kix® as being "made with All Natural Corn," throughout the Class Period, Defendant ensured that all consumers purchasing Kix® would be exposed to its "all natural corn" claim.

19.     A claim that a product or ingredient is "natural" is material to a reasonable consumer.

**Genetically-Modified Organisms Are Not Natural**

20.     The dictionary defines the term "natural" as "existing in or produced by nature:  not artificial." (Webster's Ninth New Collegiate Dictionary 788 (1990)). This common dictionary definition of the term "natural" is consistent with the expectations of a reasonable consumer.

21.     Genetically-modified organisms ("GMO") are not natural, let alone "all natural."  Monsanto, the company that makes GMO, defines GMO as "Plants or animals that have had their genetic makeup altered to exhibit *traits that are not naturally theirs*.  In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." (http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited June 13, 2012) (emphasis added)).  "Unnatural" is a defining characteristic of genetically modified foods.

22.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, defines GMO as "[a]griculturally important plants [that] are

often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these [sic] modification." (http://www.romerlabs.cornlen/analytes/genetically-modified-organisms.html (last visited June 13, 2012) (emphasis added)).

23.     That GMO are not natural is further evidenced by the explanations of health and environmental organizations, such as The World Health Organization, which defines genetically-modified organisms as "organisms in which *the genetic material (DNA) has been altered in a way that does not occur naturally*.  The technology is oftencalled 'modern biotechnology' or 'gene technology', sometimes also 'recombinant DNA technology' or 'genetic engineering'. It allows selected individual genes to be transferred from one organism into another, also between non-related species.  Such methods are used to create GM plants – which are then used to grow GM food crops."  (World Health Organization, 20 Questions on Genetically Modified(GM) Foods at http://www.who.int/foodsafety/publications/biotech/en/20questions_en.pdf (last visited  June 13, 2012).

24.     The Environmental Protection Agency has distinguished conventional breeding of plants "through natural methods, such as cross-pollination" from genetic engineering using modern scientific techniques. (United States

Environmental Protection Agency, Prevention, Pesticides and Toxic  Substances,

Questions & Answers Biotechnology: Final Plant-Pesticide/Plant Incorporated

Protectants (PIPs) Rules (Jul. 19, 2001) at

http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf  ("*Conventional breeding* is a

method in which genes for pesticidal traits are introduced into a plant *through natural*

*methods*, such as cross-pollination....  Genetically engineered plant-incorporated

protectants are created through a process that utilizes several different modem

scientific techniques to introduce a specific pesticide-producing gene into a plant's

DNA genetic material.") (emphasis of "through natural methods" added; remaining

emphasis in original) (last visited June 13, 2012)).

    25.    As indicated by the definitions above, which come for a wide array of

sources, including industry, government, and health organizations, GMO are not "all

natural."  GMO are "created" artificially in a laboratory through genetic engineering.

Thus, by claiming that its Products are "made with All Natural Corn," Defendant

deceives and misleads reasonable consumers.

### Kix® Cereals are Made From GMO Corn

    26.    Based on independent third party testing, Defendant's Products are made

from genetically modified corn.

27.     Defendant's "all natural corn" representations are false, deceptive, misleading, and unfair to consumers, who are injured in fact by purchasing products that Defendant claims are "made with All Natural Corn" when in fact they are not.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a class initially defined as follows:

> All consumers in the United States who from June 13, 2008 until the final disposition of this case (the "Class Period"), purchased the following General Mills Kix® Products:  (1) Kix® Original; (2) Honey Kix®; and (3) Berry Berry Kix®.

29.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

30.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after she has had an opportunity to conduct discovery.

31.     Numerosity.  Fed. R. Civ. P. 23(a)(1).  The potential members of the Class as defined are so numerous that joinder of all members is unfeasible and not practicable.

359556.1

While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands or millions of consumers have purchased the listed Products.

32.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.      Whether Defendant falsely and/or misleadingly misrepresented the Products as being "made with All Natural Corn";

b.      Whether Defendant's misrepresentations are likely to deceive reasonable consumers;

c.      Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301;

d.       Whether Defendant's conduct constituted a breach of express warranty;

e.      Whether Defendant's conduct constituted a breach of the implied warranty or merchantability;

f.      Whether Defendant was unjustly enriched by its conduct;

g.      Whether Defendant violated the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.* ("UCL");

h.      Whether Defendant violated the California False Advertising Law,

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL")

i.       Whether Defendant violated the California Consumers Legal

Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); and

j.       The nature of the relief, including equitable relief, to which Plaintiff

and the Class members are entitled.

33.     <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

34.     <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel is competent and experienced in litigating class actions.

35.     <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

36.     <u>Injunctive and Declaratory Relief.</u>  Fed. R. Civ. P. 23(b)(2).  Defendant's misrepresentations are uniform as to all members of the Class.  Defendant has acted or

refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## COUNT I

### (Violation of Magnuson-Moss Act – 15 U.S.C. § 2301 *et seq.*)

37.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

38.     The Magnuson-Moss Warranty Act provides consumers with a federal remedy for damages resulting from the failure of a supplier or warrantor to comply with any obligation under a written or implied warranty.

39.     Plaintiff and the Class are consumers as defined in 15 U.S.C. § 2301(3).

40.     Defendant is both a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

41.     The Products are consumer products as defined in 15 U.S.C. §2301(1).

42.     Defendant's written statements that the Products are "made with All Natural Corn" are made in connection with the sale of the Products, relate to the nature of the Products, affirm and promise that such Products are defect free, and are thus written warranties within the meaning of 15 U.S.C. § 2301(6)(A).

43.     Defendant breached this written warranty by selling Plaintiff and the Class members the Products, which are not made with all natural corn as warranted and thus do not conform to Defendant's written warranty, violating the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and causing Plaintiff and the Class members injury and damage in an amount to be proven at trial.

## COUNT II

### (Breach of Express Warranty)

44.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

45.     Plaintiff brings this claim individually and on behalf of the Class.

46.     Plaintiff and each member of the Class formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased one or more of the Products.  The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Products and through the marketing campaign, as described above.  The Products' packaging and advertising constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

47.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

48.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the Products that could provide the benefits promised, i.e. that the Products were "made with All Natural Corn."

49.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of any and all of the Products they purchased.

359556.1

## COUNT III

### (Breach of the Implied Warranty of Merchantability)

50.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

51.     Plaintiff brings this claim individually and on behalf of the Class.

52.     Plaintiff and the Class members purchased the Products for the ordinary purpose of human consumption.

53.     By representing that the Products were "made with All Natural Corn" in marketing and advertising the Products, Defendant impliedly warranted that the Products were of merchantable quality, such that the cereals were of the same average grade, quality, and value as similar goods sold under similar circumstances.

54.     Plaintiff and the Class members relied on Defendant's representations that the Products were "made with All Natural Corn" when they purchased the Products.

55.     Defendant breached the warranty implied at the time of sale in that Plaintiff and the Class members did not receive goods that were "made with All Natural Corn" as represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which those goods are used, or as promoted, marketed, advertised, packaged, labeled, or sold.

56.     At all times relevant to this action, Defendant has breached its implied warranties concerning the Products because the Products are not "made with All Natural Corn" but are made with GMO corn.

57.     As a result of Defendant's breach of implied warranties, Plaintiff and the

16

359556.1

Class members have been damaged in the amount of the purchase price of the Products they purchased.

58.     Within a reasonable time after they knew or should have known of the breach of implied warranties, Plaintiff, individually and on behalf of the Class, placed Defendant on notice thereof.

## COUNT IV

### (Unjust Enrichment)

59.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

60.     Plaintiff brings this claim individually and on behalf of the Class.

61.     Defendant sold the Products based on false and misleading advertising, as stated more fully above.

62.     Defendant has been unjustly enriched by collecting the price of the Products, which consumers paid in reliance on Defendant's false and misleading advertising.

63.     Plaintiff, on behalf of herself and the Class, seeks restitution of the full price of all Products purchased by members of the Class.

## COUNT V

### (California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq.*)

64.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

65.     Defendant publicly disseminated untrue or misleading advertising or intended not to sell its Products as advertised in violation of California Business &

Professional Code § 17500, *et seq.*, by representing that the Products are "made with All Natural Corn" when they are not.

66.     Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue or misleading.

67.     Plaintiff reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq*.

68.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

69.     Plaintiff, on behalf of herself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

## COUNT VI

**(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq*.)**

70.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

71.     Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq.*, by representing that the Products are "made with All Natural Corn" when they are not.

72.     Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, and the False Advertising Law, California Business & Professions Code § 17500.

73.     Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and Class members.  The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act and the False Advertising Law as alleged herein.

74.     Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiff relied on Defendant's representations and omissions.

75.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

76.     Plaintiff, on behalf of herself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

19

## COUNT VII

### (California Consumers Legal Remedies Act – Cal. Civ. Code § 1750, *et seq.*)

77.     Plaintiff incorporates by reference and realleges paragraphs 1-36.

78.     Plaintiff brings this claim individually and on behalf of the Class.

79.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

80.     Plaintiff and each member of the Class are consumers as defined by California Civil Code §1761(d).

81.     The Products are goods within the meaning of Civil Code §1761(a).

82.     Defendant violated the CLRA in at least the following respects:

a.     in violation of  §1770(a)(5), Defendant represented that the Products have approval, characteristics, and uses or benefits which they do not have;

b.     in violation of §1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, or that the Products are of a particular style or model, when they are of another;

c.     in violation of §1770(a)(9), Defendant has advertised the Products with intent not to sell them as advertised; and

d.     in violation of §1770(a)(16), Defendant represented that the

20

Products have been supplied in accordance with previous

representations, when they were not.

83.     Defendant affirmatively represented to consumers that the Products are

"made with All Natural Corn" when they are not.

84.     Defendant omitted to state that the Products contain GMO corn.

85.     This sort of information is relied upon by consumers in making purchasing

decisions, and is fundamental to the decision to purchase food products.

86.     Plaintiff relied upon Defendant's misrepresentations to her detriment.

87.     Defendant's misrepresentations constitute unfair, deceptive, and

misleading business practices in violation of Civil Code §1770(a).

88.     Defendant's deceptive acts and omissions occurred in the course of selling

a consumer product and have occurred continuously through the filing of this

Complaint.

89.     On June 18, 2012, Plaintiff notified Defendant in writing by certified mail

of the violations alleged herein and demanded that Defendant remedy those violations.

A copy of the letter Plaintiff sent to Defendant is attached herein as Exhibit A, which

was received by Defendant on June 20, 2012.

90.     Defendant failed to remedy the violations alleged herein by July 20, 2012.

Consequently, Plaintiff hereby amends the Complaint to add claims for actual, punitive,

and statutory damages pursuant to the CLRA.

359556.1

WHEREFORE, Plaintiff, on behalf of herself and Class members, prays for relief as follows:

A.      For an order that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and that Plaintiff and her Counsel be appointed to represent the Class members;

B.      For an order declaring Defendant's conduct violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*., the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*., breached an express warranty, breached the implied warranty of merchantability, and constituted unjust enrichment.

C.      For damages pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*. and California law in an amount to be determined at trial;

D.      For an order requiring Defendant to refund Plaintiff and all Class members for the Products;

E.      For an order prohibiting Defendant from engaging in the misconduct described herein;

F.      For an award of attorneys' fees and the costs of suit incurred herein, including expert witness fees;

G.      For an award of interest, including prejudgment interest, at the legal rate; and

H.       For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.

Dated:  May 13, 2013              **LITE DEPALMA GREENBERG, LLC**

By:    */s/ Bruce D. Greenberg*
         Bruce D. Greenberg
         Two Gateway Center, Suite 1201
         Newark, New Jersey 07102
         Tel: 973-623-3000
         Facsimile: 973-877-3845
         bgreenberg@litedepalma.com

         **AHDOOT & WOLFSON, PC**
         Tina Wolfson
         Robert Ahdoot
         Theodore W. Maya
         Bradley K. King
         10850 Wilshire Blvd., Suite 370
         Los Angeles, California 90024
         Tel: 310-474-9111
         Facsimile: 310-474-8585

         *Attorneys for Plaintiff*

359556.1

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

Plaintiff, by her attorneys, hereby certifies that to the best of her knowledge, the matter in controversy is related to *Bevans v. General Mills, Inc.*, Civil Action No. 12-cv-249 and *Marcus v. General Mills, Inc.*, 2:12-cv-2886.  Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  May 13, 2013          **LITE DEPALMA GREENBERG, LLC**

By:    <u>*/s/ Bruce D. Greenberg*</u>
      Bruce D. Greenberg
      Two Gateway Center, Suite 1201
      Newark, New Jersey 07102
      Tel: 973-623-3000
      Facsimile: 973-877-3845

359556.1